UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5925-GW-MRWx | Date | September 9, 2021 |
|---|---|---|---|
| Title | *Kang J. Choi, et al. v. General Motors LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Scott Ritsema | Ryan E. Cosgrove |
| Lydia J. Barrett | Darin J. Lang |
| Richard Denney | |

**PROCEEDINGS:** TELEPHONIC HEARING ON PLAINTIFFS' MOTION TO REMAND ACTION TO LOS ANGELES COUNTY SUPERIOR COURT [36]; SPECIALLY-APPEARING DEFENDANT GENERAL MOTORS LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, MOTION TO TRANSFER [34]

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the Motions are taken under submission.

The parties will meet and confer, and file a stipulation regarding new dates as soon as conveniently possible.

|  | : | 30 |
|---|---|---|
|  | Initials of Preparer | JG |

***Choi, et al. v. Gen. Motors, LLC, et al.***, Case No. 2:21-cv-05925-GW-(MRWx)
Tentative Rulings on: (1) Motion to Remand Action to Los Angeles County Superior Court, and (2) Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Transfer

## I. **Background**

Kang J. Choi ("Kang"), Ki Sook Choi ("Ki"), Brandon Choi ("Brandon"), and Kaitlin Choi ("Kaitlin") (collectively, "Plaintiffs") sue General Motors, LLC ("GM"), Penske Chevrolet of Cerritos ("Penske"), Delillo Chevrolet ("Delillo"), and Selman Chevrolet ("Selman") (collectively, "Defendants"), asserting claims for: 1) strict products liability, 2) negligent product liability, and 3) breach of warranty. Kang and Ki are husband and wife, and Brandon and Kaitlin are their children. *See* Complaint ¶ 1.

According to the allegations in the Complaint, Defendants manufactured, fabricated, designed, assembled, tested, distributed, sold, inspected, serviced, repaired, marketed, warranted, leased, rented, retailed, wholesaled and advertised a 2014 Chevrolet Suburban ("the Vehicle"). *See id.* ¶ 10. Penske sold the Vehicle to Plaintiffs, though both Delillo and Selman had the Vehicle in their possession in their dealer stock prior to the sale. *See id.* ¶ 12. The Vehicle and its component parts contained inherent vices and defects both in design and manufacturing, including: a defective roof structure and support system; defective and unsafe restraint systems; a defective electronic stability control system; insufficient directional and lateral stability; a defective airbag system; defective glazing for the windshields/windows; an unsafe high center of gravity; and inadequate or nonexistent warnings regarding these defects. *See id.* ¶¶ 15, 16(A)-16(G), 22, 47. GM knew of the dangers to the users of their trucks, vans, and sport utility vehicles, from rollover accidents, and of the defects making those vehicles insufficient to guard against those dangers. *See id.* ¶¶ 25-41.

On August 4, 2019, Kang was driving the Vehicle on Colorado State Highway 160 in Costilla County, Colorado, with the other plaintiffs as passengers. *See id.* ¶ 11. As the Vehicle moved back into the westbound lane after passing slower-moving traffic, the Vehicle went out of control and began to yaw. *See id.* It continued to yaw off the highway and overturned. *See id.* The roof of the Vehicle crushed down onto Kang's head, his seatbelt failed to restrain him, and Kang suffered serious personal injuries and is

now a permanent tetraplegic. *See id.* ¶¶ 11, 17. Ki, Brandon and Kaitlin were all contemporaneously aware of the severe injuries Kang suffered. *See id.* ¶ 23.

GM removed this case to federal court, exclusively on the basis of diversity jurisdiction,[1] on July 22, 2021, three days after it was filed in Los Angeles County Superior Court and before *any* of the four defendants had been served with process in the case.[2] *See* Declaration of Scott A. Ritsema in Support of Plaintiffs' Motion to Remand Action to Los Angeles County Superior Court, Docket No. 36-2, ¶¶ 4, 7-11. Less than three hours after GM removed the case, Plaintiffs served it with the Summons and Complaint. *See id.* ¶¶ 7-8.

## II. <u>Analysis</u>

### A. Motion One (Remand)

Plaintiffs' motion to remand is based on their belief that GM engaged in an improper "snap removal" by removing this case before Plaintiffs were able to serve – or, in Plaintiffs' view, had any reasonable opportunity to serve – any of the Defendants with process, including the three presumptively "local" defendants. At issue here is what is frequently termed the "no local defendant" or "forum-defendant" procedural limitation on

---

[1] GM's citizenship allegations in its Notice of Removal papers were insufficient. First, GM's allegations as to its own citizenship are incomplete because its allegation of citizenship as to its sole member – like GM, a limited liability company – was insufficient. As GM recognized in its removal papers, citizenship of limited liability companies is adjudged according to the citizenship(s) of the member(s) of such entities, *see Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006), but here GM alleged only its sole member's principal place of business and that this sole member is a Delaware limited liability company. *See* Notice of Removal ¶ 11. GM says nothing about *that sole member's* own membership (or the citizenship of any members) in its Notice of Removal. *See id.* In addition, GM failed to make *any* citizenship allegations at all in its Notice of Removal as to the other three defendants in the case. *See id.* ¶¶ 10-12. The fact that those defendants – like GM – had not yet been served with process at the time of the removal does not affect GM's obligation to make necessary jurisdictional allegations. *See* Phillips & Stevenson, RUTTER GROUP PRAC. GUIDE, FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2020) ("<u>Phillips & Stevenson</u>"), ¶ 2:2341, at 2D-23. Notwithstanding that Plaintiffs do not dispute the existence of complete diversity (or a sufficient minimum amount in controversy) here, *see* Docket No. 36-1, at 3:7-9, the Court orders GM to cure these defects/omissions in its removal allegations by September 16, 2021, lest it wants to see the matter remanded for lack of subject matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (indicating that courts must assure themselves of the existence of subject matter jurisdiction before proceeding); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004).

[2] Plaintiffs served GM on July 22, 2021, after GM had already removed the action. *See* Declaration of Scott A. Ritsema in Support of Plaintiffs' Motion to Remand Action to Los Angeles County Superior Court, Docket No. 36-2, ¶¶ 7-8. Plaintiffs served the other defendants on July 23 and July 24, 2021. *See id.* ¶¶ 9-11. Plaintiffs report that the Superior Court did not issue the Summons until July 20, 2021, and that their counsel did not receive all of the necessary service paperwork from the Superior Court until July 21, 2021, and the Summons and Complaint were "put . . . out for service" on July 21, 2021. *See id.* ¶¶ 5-7.

removals reflected in 28 U.S.C. § 1441(b)(2).

Section 1441(b)(2), concerning removals based on diversity of citizenship, provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2); *see also* Phillips & Stevenson, RUTTER GROUP PRAC. GUIDE, FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2020) ("Phillips & Stevenson"), ¶ 2:2320, at 2D-18. Plaintiffs note that courts have taken various approaches to this statute, including by requiring either that at least one defendant has been served with process or by requiring that a plaintiff at least have had a reasonable opportunity to serve at least one defendant/one local defendant with process, before a defendant can successfully remove a case featuring at least one local defendant prior to service of process upon that defendant so as to avoid application of Section 1441(b)(2)'s "no local defendant" rule.

Of course, there is another way of applying Section 1441(b)(2) – by its plain language. Under that approach, only if a local/forum defendant has been "properly joined and served" may an action not be removed. *See* Phillips & Stevenson ¶ 2:2321, at 2D-18 – 19 ("[O]nce *any* 'local' defendant has been properly *served*, the action cannot be removed on diversity grounds by that defendant *or any other defendant*. (*I.e.*, where a 'local' defendant is named, nonresidents must remove *before* that defendant is served.)"). This approach says nothing about a requirement that at least one defendant has been served with process in the action, and certainly nothing about requiring a defendant to allow a plaintiff to have a "reasonable opportunity" to effect service of process before the defendant removes a case featuring a "local defendant."

Both Plaintiffs and GM recognize that district courts are divided on the proper approach to take with respect to this issue. *See* Phillips & Stevenson ¶ 2:2322, at 2D-19 (recognizing a "wide split among the district courts whether § 1441(b)'s 'properly joined and served' requirement bars a local defendant from removing if that defendant makes a voluntary appearance *before formal service*")[3]. Plaintiffs assert that judges in the Central

---

[3] Phillips & Stevenson recommends an approach that "the better view would seem to be that local defendants should not be able to avoid the statutory bar against such removal in diversity actions by volunteering an appearance before formal service." Phillips & Stevenson ¶ 2:2322.4, at 2D-20. Putting

3

District of California – with neither the Ninth Circuit nor the Supreme Court having weighed-in on the topic – have generally declined to follow the plain language approach (whereas Plaintiffs admit that district courts in the Northern District of California and Southern District of California follow the plain language/"literalist" approach). GM has cited several decisions that go the other way in this District,[4] but there is no need to decide on which side of the line this District comes down with mathematical precision. This Court will apply the plain language of the statute, as is true of the only three federal appellate decisions addressing this issue head-on.

The Third Circuit, in *Encompass Insurance Company v. Stone Mansion Restaurant Incorporated*, 902 F.3d 147 (3d Cir. 2018), was the first of three federal appellate decisions to directly-decide the permissibility of practices somewhat-similar to what GM engaged in here. In fact, in that case, the defendant's lawyer had openly-agreed to accept service on behalf of his client (a "local defendant"), had asked the plaintiff's attorney to send him an "Acceptance of Service" form and then, after receipt of the filed-complaint and the Acceptance of Service form, informed plaintiff's counsel that he would not be sending the Acceptance of Service form back to plaintiff's counsel until after he had removed the action to federal court, all for the express purpose of avoiding the impact of Section 1441(b)(2)'s no-local-defendant rule. *See id.* at 150 & n.1. The Third Circuit concluded that Section 1441(b)(2)'s language was unambiguous, that "[i]ts plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served," and that its literal interpretation (which was not inconsistent with intentions reflected in legislative history) would not result in "absurd or bizarre results." *Id.* at 152-54.

In 2019, the Second Circuit agreed with *Encompass Insurance*, rejecting the

---

aside the fact that this "better view" would contradict the "properly . . . served" limitation in the actual statute, this recommendation appears to be limited to instances where it is a "local defendant" who engaged in what Plaintiffs have termed "snap removal." Here, GM is not one of the local defendants, so it is unclear what Phillips & Stevenson would have to say in this particular circumstance. *See Tex. Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020) ("Of some importance, the removing party is not a forum defendant.").

[4] This judicial officer's only comment on the subject has been that "though the 30-day clock in which to remove is keyed to service of the Summons and Complaint, there is no apparent prohibition against a defendant removing *before* being so served." *Hawkins v. Raymond Corp.*, EDCV 10-1931-GW (AJWx), 2011 WL 13224820, *3 n.6 (C.D. Cal. Mar. 7, 2011).

plaintiffs' attempt to have it "depart from the plain meaning of Section 1441(b)(2)." *Gibbons v. Bristol-Myers Squibb Company*, 919 F.3d 699, 705 (2d Cir. 2019). Like the Third Circuit had before it, the Second Circuit rejected the plaintiffs' "absurd results" argument. *See id.* at 705-07. The next year, the Fifth Circuit joined the approach taken in *Encompass Insurance* and *Gibbons*, specifically-citing those decisions (along with a footnote in a 2001 decision from the Sixth Circuit, *see McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001)). *See Tex. Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 485 (5th Cir. 2020). Like the other appellate courts, the Fifth Circuit applied the statute's plain language and rejected an "absurd results" argument. *See id.* at 485-87.

Plaintiffs note that there is a fourth decision from the federal courts of appeal to discuss the operation of Section 1441(b)(2) in this context somewhat – *Goodwin v. Reynolds*, 757 F.3d 1216 (11th Cir. 2014). But that decision is clearly *dicta* in that regard. *Goodwin* dealt with whether or not a district court's decision to grant a plaintiff's motion to voluntarily dismiss an action without prejudice was or was not warranted. The plaintiff sought that dismissal after two non-forum defendants had removed the case to federal court before any defendant, including the single forum-defendant, had been served. *See id.* at 1218. The plaintiff wanted to "refile the case in state court in such a manner as to irrefutably trigger the forum-defendant rule and, thereby, preclude a second removal." *Id.* The Eleventh Circuit decided that it was not an abuse of discretion for the district court to grant the plaintiff's motion to dismiss without prejudice. *See id.*

Of note, the district court had also denied the plaintiff's alternative motion to remand, which had been based on the argument that the case had been removed in violation of the forum-defendant rule. *See id.* at 1219. However, the decision on that motion was not before the Eleventh Circuit. *See id.* at 1219 n. 7. Nevertheless, the Eleventh Circuit did describe "the purported removability" of the case as having been "based on a technicality," and merely assumed that the case was removable as the issue was not before it. *See id.* at 1220-22 & n.12. There is therefore *some* reason for Plaintiffs to appropriately believe that the Eleventh Circuit is potentially on their side with respect to the issue at-bar here.

But, again, the question the Court of Appeals decided in *Goodwin* was the propriety of the voluntary dismissal without prejudice. The Eleventh Circuit simply

concluded that the district court could, within its discretion clearly-conferred to it by Federal Rule of Civil Procedure 41(a)(2), "undo Defendants' gamesmanship" present in their pre-service removal. *See id.* at 1221 & n.16 (emphasis omitted). However, the appellate court did not effectively re-write Section 1441(b)(2) by ignoring the "properly joined and served" language (as Plaintiffs essentially ask the Court to do here), because the issue of the propriety of the district court's denial of the plaintiff's motion to remand was – as the Eleventh Circuit repeatedly pointed out – not before it.[5]

Plaintiffs' arguments for why they believe the Court should take some approach other than the plain language approach are unconvincing. They generally assert that the Court should do so in order to prohibit defendants from engaging in "gamesmanship" by monitoring state-court dockets and removing cases at the first sign that they – along with one or more "local defendant" – have been named as a defendant. In part, they rest this argument on the belief reflected by some courts – including *Goodwin* – that Section 1441(b)(2) was amended in 1948 to add the "properly joined and served" language in order to prevent *plaintiffs* from engaging in gamesmanship by naming as a defendant – but never serving with process – a local defendant and thereby preventing removal. *See Goodwin*, 757 F.3d at 1221 (commenting that the "properly joined and served" language had been added to Section 1441(b)(2) in 1948 and that "[m]ultiple courts [had] interpreted it as an effort to prevent gamesmanship by plaintiffs"); *see also Encompass Ins.*, 902 F.3d at 153.

But this observation actually serves to defeat Plaintiffs' overall argument. If Congress addressed what it may have viewed as problematic gamesmanship by amending Section 1441(b)(2), Congress may do so again here if it finds the practice GM has engaged in problematic enough, and frequent enough in-operation, to legislate against. *See Encompass Ins.*, 902 F.3d at 153 n.4 ("If a significant number of potential defendants (1) electronically monitor dockets; (2) possess the ability to quickly determine whether to remove the matter before a would-be state court plaintiff can serve process; and (3) remove the matter contrary to Congress' intent, the legislature is well-suited to address the issue."); *id.* at 154 ("Reasonable minds might conclude that the procedural result

---

[5] *Encompass Insurance* was clearly aware of *Goodwin*, citing it with respect to the question of belief about the legislative purpose in adding the "properly joined and served" language to Section 1441(b)(2). *See Encompass Ins.*, 902 F.3d at 153.

6

demonstrates a need for a change in the law; however, if such change is required, it is Congress – not the Judiciary – that must act."); *see also Tex. Brine*, 955 F.3d at 486 ("We are not the final editors of statutes, modifying language when we perceive some oversight."). Unless and until it does so, this Court's role is to apply the plain language of a statute, and the plain language of Section 1441(b)(2) demonstrates that a "local defendant" has to be "properly joined *and served*" before the prohibition present in Section 1441(b)(2) goes into effect.

It is no answer to say that courts should require that a plaintiff at least have a reasonable opportunity to effect service of process upon a local defendant before allowing a defendant to "beat the clock" by removing before such service occurs. There is *nothing* in the statute that speaks to that principle, and courts would be left judging what a reasonable-opportunity-to-serve is with no statutory groundrules. *See Tex. Brine*, 955 F.3d at 487 ("We will not insert a new exception into Section 1441(b)(2), such as requiring a reasonable opportunity to serve a forum defendant."); *Gibbons*, 919 F.3d at 706 ("Congress may well have adopted the 'properly joined and served' requirement in an attempt to both limit gamesmanship and provide a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant.").

This last point reflects another contradiction-in-terms in one of Plaintiffs' other arguments for why the Court should follow what they assert is the majority approach in this District:[6] because litigants should have some firm ability to predict how the courts in at least one district will answer a question of law or procedure. Putting aside the recognition that there are innumerable instances of intra-district deviations amongst the nation's various district courts, if courts are left to determine on their own, with no structured analysis, when a plaintiff has or has not had a reasonable opportunity to serve a local defendant, how can that possibly lead to *more* certainty on application of the

---

[6] *None* of the Central District cases Plaintiffs rely upon in their briefing post-date *Encompass Insurance*, *Gibbons* or *Texas Brine*. *See* Docket No. 36-1, at 6:15-10:1 (relying on cases from 2009 through August 2, 2018, whereas the Third Circuit issued *Encompass Insurance* on August 22, 2018). Meanwhile, the two cases in this District that Plaintiffs acknowledge came out the other way both post-date (and cite) *Encompass Insurance*. *See Dechow v. Gilead Scis., Inc.*, 358 F.Supp.3d 1051, 1054 (C.D. Cal. 2019); *Zirkin v. Shandy Media, Inc.*, No. 2:18-cv-09207-ODW (SSx), 2019 WL 626138, *2-3 (C.D. Cal. Feb. 14, 2019).

statute? As Plaintiffs complain in their Reply brief, at least one decision in this District has already ruled that a notice of removal filed less than 24 hours after a state court summons was issued was a sufficient opportunity to serve a local defendant. Would Plaintiffs argue that all judicial officers within this District should follow that approach for reasons of consistency?

Certainty follows from application of the plain language of a statute, an approach that is in-line with the only federal courts of appeal to have directly-considered the question. If Plaintiffs and those sharing their view believe that this leaves open an avenue for a defendant to engage in "gamesmanship" by monitoring the state courts' dockets with a hawk's-eye view, or that reading the statute as is proposed here conflicts with the general purposes of diversity jurisdiction,[7] their recourse is through further amendment of the statute, not inexact standards based upon words and/or principles that do not actually appear in the statute.

For the foregoing reasons, the Court rejects Plaintiffs' attempt to rely on the no-local-defendant rule to obtain a remand here, and therefore denies Plaintiffs' motion. There is no need for the Court to consider GM's alternative argument that the three "local defendants" are somehow "sham" defendants (an argument that GM did not make in its Notice of Removal, in any event).

### B. Motion Two (Personal Jurisdiction)

Because the Court will not remand this action based upon the grounds and arguments raised in Plaintiffs' motion, the Court must proceed to consider GM's motion. In that motion, GM asks – pursuant to Federal Rule of Civil Procedure 12(b)(2) – for an order quashing service of process and dismissing the action as to it because of lack of personal jurisdiction. In the alternative, GM asks for an order transferring this case to the District of Colorado pursuant to 28 U.S.C. § 1406 and 28 U.S.C. § 1391(b)(2).

With respect to personal jurisdiction, GM emphasizes that the vehicle crash occurred in Colorado, Plaintiffs are all citizens of Colorado, medical care was rendered in

---

[7] "This 'forum defendant' rule 'reflects the belief that [federal] diversity jurisdiction is unnecessary because there is less reason to fear state court prejudice against the defendants if one or more of them is from the forum state.'" *Spencer v. U.S. Dist. for N. Dist. of Cal.*, 393 F.3d 867, 870 (9th Cir. 2004) (quoting Chemerinsky, *Federal Jurisdiction* § 5.5, at 345 (4th ed. 2003)). Of course, this observation does not properly take into account the fact that the defendant who removed the case here *is* – at least seemingly, *see* Footnote 1, *supra* – a non-forum defendant.

Colorado (likely entirely by Colorado residents), the Vehicle was licensed and titled in Colorado, and that the design and assembly of the Vehicle occurred outside of California. However, it admits that Plaintiffs purchased the Vehicle from a California dealer, and does not contest Plaintiffs' allegation that GM at the very least manufactured the Vehicle. It also does not appear to contest Plaintiffs legal assertion that the manufacturer, distributor and retail seller of an allegedly-defective product are strictly liable.

GM argues that Plaintiffs will be unable to demonstrate that the Court has either general or specific personal jurisdiction over GM. Plaintiffs freely admit that they do not attempt to establish the existence of *general* personal jurisdiction. *See* Docket No. 42, at 3:5.

With respect to the issue of specific personal jurisdiction, GM asserts that "the lawsuit does not arise out of any conduct by [GM] **in** California," Docket No. 34, at 1:24-26, and rests its argument on the Supreme Court's decision this year in *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S.Ct. 1017 (2021). From that case they seek recognition of a rule that "the mere purchase of a vehicle in a jurisdiction, without more, is not sufficient to subject the manufacturer of the vehicle to personal jurisdiction." Docket No. 34, at 1:12-16.

GM pays particular attention to a passage in *Ford Motor* where the Supreme Court wrote as follows:

> For each of [the States of first sale, Washington and North Dakota], the suit involves all out-of-state parties, an out-of-state accident, and out-of-state injuries; the suit's only connection with the State is that a former owner once (many years earlier) bought the car there. In other words, there is a less significant relationship among the defendant, the forum, and the litigation." So by channeling these suits to Washington and North Dakota, Ford's regime would undermine, rather than promote, what the company calls the Due Process Clause's "jurisdiction-allocating function."

*Id.* at 1030 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Taken out of context, this passage might be seen as supporting GM's position here in impressive fashion. But this segment of the Supreme Court's reasoning was simply to explain why, in comparative terms, "principles of 'interstate federalism' support jurisdiction over these suits in Montana and Minnesota." *Id.* It is not remotely a holding that personal jurisdiction could not be had in the States where the vehicles in question were sold. This is true even if the Court ignores the fact that Plaintiffs' lawsuit does *not* involve "all out-

of-state parties" and that the sale was not made to a "former owner," but was instead a new sale to Plaintiffs.[8] That Montana and Minnesota might have been "the most natural State[s]" for personal jurisdiction in the cases before the Supreme Court, *see id.* at 1031, does not suggest exclusivity insofar as personal jurisdiction is concerned.

In its Reply brief, GM reads *Ford Motor* as "conclud[ing] that the mere fact of sale . . . is insufficient to create the requisite connection" for purposes of establishing specific personal jurisdiction. Docket No. 50, at 3:3-5. Nowhere in the Supreme Court's opinion is such a proposition found. Nor is *Ford Motor*'s discussion of *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S.Ct. 1773 (2017), meaningful here. *Ford Motor* distinguished that earlier, recent, case by pointing out, in part, that the plaintiffs at issue in that case had *not* bought the prescription drug in question in the forum in question. *See Ford Motor*, 141 S.Ct. at 1030. That is *not* the case here.

*Ford Motor* is not this case, because in that case (or, rather, two cases) the defendant's product caused injury in the forum State to one of the State's residents. *Ford Motor* would therefore govern had Plaintiffs brought suit in Colorado. The only reason the question of the location of the sale came up in *Ford Motor* was because the defendant had asserted "that jurisdiction is improper because the particular car involved in the crash was not first sold in the forum State, nor was it designed or manufactured there," an argument the Supreme Court rejected. *Id.* at 1022; *see also id.* at 1023 ("[T]he causal link existed, Ford continued, only if the company had designed, manufactured, or – most likely – sold in the State the particular vehicle involved in the accident. In neither suit could the plaintiff make that showing."). But the Supreme Court's rejection of that argument meant only that personal jurisdiction could not be had *only* in a State that met one of those conditions; it did not reject the proposition that personal jurisdiction could be had in *at least* those States meeting one or more of those conditions. *See id.* at 1026 ("So the case is not over even if, as Ford argues, a causal test would put jurisdiction in only the States of first sale, manufacture, and design. A different State's courts may yet have jurisdiction, because of another 'activity [or] occurrence' involving the defendant

---

[8] The Court places no jurisdictional-dispositive weight – whatever liability-related impact it may or may not have – on the sole fact that the sale here allegedly took place five years before Plaintiffs' accident. *See* Complaint ¶¶ 11-12.

that takes place in the State.").

Outside of reliance on *Ford Motor*, GM does not explain how delivery of the Vehicle for sale in California via one of its affiliated dealerships would not amount to affirmative conduct directed at California for purposes of the purposeful availment/direction analysis that is part of a court's specific personal jurisdiction inquiry. *See id.* at 1028 ("Small wonder that Ford has here conceded 'purposeful availment' of the [Montana and Minnesota] markets."); *see also, e.g.*, *Bader v. Avon Prods., Inc.*, 55 Cal.App.5th 186 (2020); *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.*, 31 Cal.App.5th 543, 553-59 (2019); *Bridgestone Corp. v. Superior Court*, 99 Cal.App.4th 767, 774-77 (2002); Phillips & Stevenson ¶¶ 3:175 – 176.1, at 3-88 – 89. Indeed, as Plaintiffs interpret it, they view GM's motion as "not even address[ing] the issue of purposeful availment." Docket No. 42, at 4:12. If Plaintiffs are correct about the reach of strict liability law in California, it is hard for this Court to understand how their claims against GM could *not* arise out of GM's role in the California sale of the Vehicle to Plaintiffs. In short, the Court agrees with Plaintiffs that "GM's reliance on [*Ford Motor*] as standing for the extremely broad proposition that jurisdiction may no longer rest on the location of original sale is misplaced," and that the Supreme Court merely held "that jurisdiction may also be proper in the State where the incident occurred." Docket No. 42, at 8:23-27.

Failing to persuade the Court at the purposeful availment/direction stage of the analysis for specific personal jurisdiction, GM also attempts to argue that an assertion of jurisdiction over it in this case would not comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). Unlike the other prongs of the specific personal jurisdiction inquiry, GM bears the burden on this point, and that burden is for it to present a "compelling case that the exercise of jurisdiction would not be reasonable." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007); *see also Ayla, LLC v. Alya Skin Pty. Ltd.*, __ F.4th __, 2021 WL 3823624, *7 (9th Cir. Aug. 27, 2021). This is a multi-factor inquiry. *See Menken*, 503 F.3d at 1058 (listing factors); *see also* Phillips & Stevenson ¶¶ 3:141-144.3, at 3-73 – 76. GM spends three paragraphs on it in its opening brief. *See* Docket No. 34, at 8:6-26.

GM does not contest that it has "regularly" appeared as a litigant in California

11

courts and that it conducts "some business" in California. But it argues that if this were enough to defeat its case at the third prong of the specific jurisdiction test, it would be the equivalent of general jurisdiction over it. This is obviously not true. General jurisdiction relates to being able to sue a defendant in a venue for its conduct anywhere. In contrast, information relevant at the third prong of the specific jurisdiction test means that a plaintiff has *already demonstrated* a connection between the defendant, the defendant's activity, and the forum. GM obviously goes too far in this argument. Its activity in California is at issue here.

With respect to this inquiry, too, GM emphasizes what it sees as only a shoestring-connection to California, which it believes means "California has no legitimate interest in litigating this matter as to GM." Docket No. 34, at 8:17-18. Of course, these are only two of the relevant factors, *see Menken*, 503 F.3d at 1058 (identifying "the extent of the defendants' purposeful interjection into the forum state's affairs" and "the forum state's interest in adjudicating the dispute" as two of seven relevant factors), and even if it is correct as to the limited connection of this case (as opposed to GM more-generally) to California, its rhetoric outpaces reason in the assertion that California has *no* legitimate interest. It also asserts that the Court must protect against a serious burden on an alien defendant being outweighed by minimal interests on the part a plaintiff or the forum, relying on *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987), a case involving a defendant hailing from a *foreign country*.

The Court is not persuaded that GM has satisfied the "compelling case" burden given its abbreviated attention to this issue.[9] For one thing, it all but avoids any discussion of the extent of its operations in California, which the Court can safely presume (simply by taking judicial notice of the freeways) is considerable. Second, GM attempts to minimize California's interest. While it is true that these particular Plaintiffs are not California residents/citizens, to the extent that they are correct that GM sells vehicles with design/manufacturing defects in California, the vast majority of which are surely sold to California citizens, California plainly has an interest in that behavior. This

---

[9] GM's opening brief on its motion was 11 pages long. *See* Docket No. 34. It is not as if it was prevented from a more-robust discussion by page-limitations.

case is unlike, for instance, *Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986), where the Ninth Circuit concluded that it would be unreasonable for California courts to exercise jurisdiction against a Utah *car dealer* when the only connection to California was a chain-of-title connection resulting from a *third party's decision* to sell the vehicle at an *auto auction* in Los Angeles. *See id.* at 1072, 1075.

In sum, the Court concludes that exercise of personal jurisdiction over GM in this action is proper.

Alternatively, GM seeks a transfer of the action to the District of Colorado, arguing that, pursuant to 28 U.S.C. § 1391(b)(2), that district "is the judicial district in which a substantial part of the events or omissions giving rise to plaintiffs' claim occurred." Docket No. 34, at 10:20-22. However, GM's motion in this regard is based on the assertion that venue over GM is *improper* in this District, and is therefore brought pursuant to 28 U.S.C. § 1406.

But having not contested Plaintiffs' legal proposition that, under California law, a manufacturer is strictly liable for product defects, GM has not explained why a substantial part of the events giving rise to its liability would not have occurred at the place-of-sale, *i.e.* California. In fact, it boldly asserts that "none of the events giving rise to the claim occurred in California." Docket No. 50, at 6-7. This is a suspect proposition if it is true that a manufacturer of a car can be strictly liable for its defects and the car is sold to a plaintiff in California.

The more-fundamental problem with the venue aspect of GM's motion, however, is that it removed this action to this Court. Venue, therefore, cannot be *improper* here. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953) ("[E]ven on the question of venue, § 1391 has no application to this case because this is a removed action. The venue of removed actions is governed by 28 U.S.C. (Supp. V) § 1441(a) . . . ."); *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F.Supp.2d 1151, 1156 (N.D. Cal. 2009); *Chrisman v. Promote Mexico, LLC*, CV 19-10834 DSF (JCx), 2020 WL 2735620, *3 (C.D. Cal. Feb. 24, 2020); Phillips & Stevenson ¶ 4:394, at 4-52; *see also id.* ¶ 4:196, at 4-33; *id.* ¶ 2:3580, at 2D-200. "[N]either the defendant nor the plaintiff can challenge original venue if the action was removed to the district located where the action was pending in state court." Phillips & Stevenson ¶ 4:400, at 4-53. Consequently, a Section 1406

transfer motion cannot be made. *See id.* ¶ 4:401, at 4-53. But GM's motion, to the extent it seeks transfer, was brought only to 28 U.S.C. § 1406, not as a convenience-transfer pursuant to 28 U.S.C. § 1404(a).[10]

As such, the Court has no need to actually address or resolve GM's assertions about where a substantial part of the events or omissions giving rise to Plaintiffs' claims against GM occurred. The Court will deny GM's request to transfer the case pursuant to Section 1406.

### III. Conclusion

For the above stated reasons, Plaintiffs' motion to remand is DENIED, and GM's motion to dismiss for lack of personal jurisdiction is DENIED.

---

[10] The Court declines to consider any issues relevant to a Section 1404(a) convenience transfer raised for the first time in GM's Reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

14